UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David Egge, for himself and on behalf of all others similarly situated,

Plaintiff,

v.

Healthspan Services Company d/b/a Reliance Recoveries,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-934 ADM/AJB

---

Jordan M. Lewis, Esq., Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, MN, appeared for and on behalf of Plaintiff.

Susan K. Fitzke, Esq., and James F. Roegge, Esq., Meagher & Geer, P.L.L.P., Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On January 25, 2002, the Motion to Certify Class [Doc. No. 62] of Plaintiff David Egge ("Egge" or "Plaintiff"), and the Motion to Deny Class Certification [Doc. No. 58] of Defendant Healthspan Services Company d/b/a Reliance Recoveries ("Reliance"), were argued before the undersigned United States District Judge. Egge alleges Reliance violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e & 1692f, by assessing interest on accounts with no underlying legal obligation or promise by the debtor to pay such interest. Am. Compl. ¶ 10. Egge seeks certification of a class of plaintiffs similarly situated to himself. For the reasons set forth below, Egge's Motion is granted, and Reliance's Motion is denied.

## II. BACKGROUND

In March 1995, Egge's wife was hospitalized for about three weeks and incurred medical

MAY 16 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

expenses with Allina's Abbott Northwestern Hospital in Minneapolis, Minnesota. In sum, Egge was responsible for $3,959.00 of medical bills,[1] of which $50 was paid. On November 13, 1995, Allina assigned the remaining debt to Reliance for collection.

On or about November 14, 1995, Reliance mailed a form letter collection notice to Egge identifying his account balance and stating that "interest may be charged at 6% per annum on the past due balance." Lewis Aff. Ex. B. On or about December 14, 1995, Reliance sent a second letter to Egge containing the same sentence stating that interest "may" be charged. Reliance began assessing interest on Egge's account on January 7, 1996, approximately 53 days after the first letter was sent. Without further notice, interest was charged retroactively to the date of the first letter, and was charged thereafter periodically, usually on a monthly basis.

Thereafter, all correspondence from Reliance to Egge identified only a total account balance, and did not separate the principal and the interest amounts. Egge alleges that Reliance failed to affirmatively state that interest had been charged, and that none of the other form letters sent to him after January 7, 1996, ever mentioned the word "interest." Reliance contends that identifying the total account balance constitutes a sufficient statement of interest charges, because "even the least sophisticated consumer would recognize that the amount claimed owing by Reliance on the debtor's unpaid account was increasing due to an interest assessment." Def. Mem. in Opp. at 15. Egge asserts that interest is chargeable only when the debtor has agreed to pay it,[2] and that neither he nor

---

[1] Under Minnesota law at the time, Egge was legally responsible for his wife's medical expenses. Egge v. Healthspan Servs. Co., 115 F.Supp.2d 1126, 1128 (D. Minn. 2000); Egge v. Healthspan Servs. Co., No. Civ. 00-934, 2001 WL 881720, at *1 (D. Minn. July 30, 2001).

[2] The general rule is that liability for interest is purely a matter of contract, requiring a promise to pay it. American Druggists Ins. v. Thompson Lumber Co., 349 N.W.2d 569, 573 (Minn. Ct. App. 1984) (citing Tate v. Ballard, 68 N.W.2d 261(Minn. 1954)).

any putative class member were party to an agreement to charge interest.[3]

In a sample of 50 prospective class members, all of the debtors received one letter containing the sentence "interest may be charged at 6% per annum on the past due balance," and approximately half of the debtors received a second such letter, as Egge did, approximately 35 days later. All but one debtor sampled were assessed 6% retroactive interest charges approximately 53-55 days after receipt of the first collection letter.[4] For all putative class members, the collection letters each contained the identical sentence regarding interest charges, and all received either one or two letters, but no more than two. Plaintiff asserts that none of the other prospective class members received any form of notice of interest assessment other than these letters, and that there is no evidence of any prospective class member having objected in response to the letters. None of the putative class members were provided any statement of the amount of interest charged. While no putative class members agreed to pay interest, all prospective class members received the same letter or letters, and were charged interest retroactively approximately 55 days after receipt of the first letter.

Accordingly, Egge claims Reliance violated the FDCPA. Reliance counters by asserting the affirmative defense of the "account stated" doctrine. Reliance argues that "[a] party's retention without objection for an unreasonably long time of a statement of an account rendered by the other party is a manifestation of assent." American Druggists Ins. v. Thompson Lumber Co., 349 N.W.2d 569, 573 (Minn. Ct. App. 1984) (citing Restatement (Second) of Contracts § 282(1) (1981)); see also

---

[3] There is no evidence of any putative class member having had a contract with any of the creditors establishing an agreement to pay interest.

[4] One account was not charged interest until 206 days after receipt of the letter. To avoid problems with such anomalies, Plaintiff offers to stipulate to an amendment of the class definition to require that all class members be charged interest no later than 60 days after receiving the first Reliance collection letter. Pl. Reply Mem. at 4-5.

Joseph V. Edeskuty & Assocs. v. Jacksonville Kraft Paper Co., 702 F.Supp. 741, 748 (D. Minn. 1988). At this stage, however, the merits of Egge's claim and Reliance's defense are not at issue. Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). For resolution of the Motions, the requirements of Fed. R. Civ. P. 23 for class certification will be analyzed.

## III. DISCUSSION

### A. Rule 23(a) Requirements

For class certification to be appropriate, (1) the class must be so numerous that joinder of all members is impracticable (numerosity), (2) there must be questions of law or fact common to the class (commonality), (3) the claims or defenses of the representative party must be typical of the class (typicality), and (4) the representative party must fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a). Reliance does not contest the numerosity requirement.[5]

#### 1. Commonality

Reliance asserts that Egge's claim does not meet the commonality requirement because Egge received two letters, and approximately two months elapsed before interest was charged to him, while some class members received only one letter and generally individual debtors received only one month notice prior to assessment of interest on their account. Roe Dep. at 42-43. Reliance also argues that because Egge did not object to the assessment of interest, his claim might be uncommon if other class members are determined to have objected. Egge responds that no evidence exists of

---

[5] A potential of 350,000 debtors might qualify for this class.

any putative class member having objected, and that no class member had adequate notice that interest was being charged such that they would know to object. Reliance asserts the affirmative defense of the "account stated" doctrine, which requires a determination of the sufficiency of notice received by each individual debtor. Reliance claims that because the number of letters received and the amount of elapsed time is not identical for Egge and all other class members, his claim is uncommon. "When the resolution of a common legal issue is dependent upon factual determinations that will be different for each purported class plaintiff, . . . courts have consistently refused to find commonality and have declined to certify a class action." Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp., 149 F.R.D. 65, 76 (D. N.J. 1993) (citing Werlein v. United States, 746 F.Supp. 887, 912 (D. Minn. 1990), vacated on other grounds, 793 F.Supp. 898 (D. Minn. 1992)).

However, "factual variations among class members' grievances do not defeat a class action." Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998). "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977), cert. denied, 434 U.S. 856 (1977). "Not every question of law or fact need be common to the class to satisfy the requirements of 23(a)(2)." Lockwood Motors, Inc. v. General Motors Corp., 162 F.R.D. 569, 575 (D. Minn. 1995). Rather, Rule 23(a)(2) is easily met in most cases because it "requires only that the course of conduct giving rise to a cause of action affects all class members, and that at least one of the elements of that cause of action is shared by all class members." Id. In the instant case, whether the language in the collection letter is sufficient to create an account stated, within either a one-month or two-month time period, is a central question of law applicable to all potential class

members. Egge avers that no putative class member, regardless of receiving one or two letters, received sufficient notice to create an account stated on the basis of the collection letters. This issue is common to all members of the class; all putative members received the same letters with the same language, and all were charged interest within 60 days of receipt. The extent to which individual questions may or may not predominate over this common issue will be addressed under the rubric of Rule 23(b). For the purposes of Rule 23(a), however, Egge has demonstrated a common question of law or fact.

Reliance argues, even assuming liability, commonality is destroyed because each potential class member's damages would have to be individually determined, and that some members will have suffered actual damages while others will be entitled to statutory damages only. This condition does not fracture the class. "The damages recoverable for the class members' injuries may differ--some may be eligible for both actual and statutory damages, others actual damages only, and still others just statutory relief--but the fact remains that their injuries are the same." Keele, 149 F.R.D. at 593.

Finally, Reliance contends that the receipt of the same debt collection letter does not establish commonality in FDCPA cases unless the language or form of the debt collection letter itself constitutes a violation. Egge relies on cases holding that commonality is satisfied in FDCPA cases by all class members receiving the same form letter followed by identical conduct by the debt collector. See, e.g., Keele, 149 F.3d at 594 ("Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents."); Vines v. Sands, 188 F.R.D. 302, 304

(N.D. Ill. 1999). While Plaintiff does not allege that Reliance's letters themselves constitute a violation of the FDCPA, the letters are the only foundation which Reliance asserts its affirmative account stated defense. Whether or not the letters sufficiently state an account is the question common to all putative class members receiving the same letter, just as whether or not the letters constitute an FDCPA violation is the common question in the cases cited by Plaintiff. The common applicability of the letters to each putative class member is not changed simply because the letter itself is not alleged to violate the FDCPA. What is controlling is that all putative class members received the same letters, and the letters are the only basis for Reliance's defense. See Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302, 308 (N.D. Ill. 1995) (citations omitted); Kleiner v. First Nat'l Bank of Atlanta, 97 F.R.D. 683, 692 (N.D. Ga.) ("Claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action . . . ."). A common nucleus of operative facts exists in this case, and commonality is established.

**2. Typicality**

Typicality is satisfied "when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." Lockwood, 162 F.R.D. at 575. "Thus a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." Id. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir. 1995).

Here, the claims of each of the putative class members are that insufficient notice was given in the collection letters to create an account stated. The legal theory typical of every putative class member is that no contractual obligation to pay interest was established. Egge's claims are typical

of the putative class members' claims and factual predicate.

Reliance argues that "this is not a case where the receipt of the same violative letter by the putative class members forms the basis of the class claims," and that the letters are only "one piece of evidence" in establishing Reliance's defense. Def. Reply Mem. at 16. However, the legal significance of the content of the letters is a determining factor in this case, and the same letters were sent to all putative class members. This satisfies the Rule 23(a) typicality requirement.

**3. Adequacy**

Reliance argues that Egge is not an appropriate class representative because he fails to establish a "commonality of the interests of the representative and the class members." Kurczi v. Eli Lilly & Co., 160 F.R.D. 667, 678 (N.D. Ohio 1995). Reliance claims that Egge has a factually distinct claim because he has not suffered any actual damages, and that fact may cause him to "become distracted by the presence of a possible defense applicable only to him." Def. Mem. in Supp. at 11 (quoting J.H. Cohn & Co. v. American Appraisal Assocs., Inc., 628 F.2d 994, 999 (7th Cir. 1980)). However, the account stated doctrine is the *only* affirmative defense asserted by Reliance in this case, and is intended to apply to all class members, not just to Egge. Again, this defense turns on the legal significance of the collection letters sent to every putative class member, including Egge. Egge has "an economic stake in the outcome of this litigation because he is seeking statutory damages, which may be recovered without regard to actual damages." Wilborn v. Dun & Bradstreet Corp., 180 F.R.D. 347, 355 (N.D. Ill. 1998); see also Baker v. G.C. Servs. Corp., 677 F.2d 775, 781 (9th Cir. 1982) ("[S]tatutory damages are available without proof of actual damages."); Clomon v. Jackson, 988 F.2d 1314, 1321-22 (2nd Cir. 1993) (awarding statutory damages in the absence of proof of actual damages in an FDCPA case); Harper v. Better Business Servs. Inc., 961

F.2d 1561, 1563 (11th Cir. 1992) (same); Picht v. Hawks, 77 F.Supp.2d 1041, 1043 (D. Minn. 1999) (stating that FDCPA recovery does not require proof of actual damages). A class representative can represent a class whether or not he suffers actual damages, as long as the class members' injuries arose out of the same violative conduct. Keele, 149 F.3d at 594; see also Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997).

Reliance also alleges Egge is an inadequate representative because he is not financing the lawsuit. Dalton v. FMA Enterprises, Inc., No. 95-395-CIV-FTM-19D, 1996 WL 379105, at *6 (M.D. Fla. July 1, 1996) (stating that "it is Plaintiff's ultimate responsibility to provide adequate financing" in a class action). However, a plaintiff's lack of resources to finance a lawsuit is not a bar to adequacy where, as here, class counsel advances the costs of litigation contingent on the outcome. Sonmore v. CheckRite Recovery Servs., Inc., 206 F.R.D. 257, 263 n.4 (D. Minn. 2001) (citations omitted).

Finally, Reliance asserts that a required element of liability for each debtor account is a failure to object to the interest assessments. Reliance claims that because Egge did not object, he has "attempted to affirmatively waive a potential argument which other class members could assert to void Reliance's account stated defense as to their claim." Def. Reply Mem. at 16. Because no evidence has been proffered that any putative class member objected to the interest assessments, this argument is unpersuasive.

Reliance does not contest the adequacy of Plaintiff's counsel. The adequacy requirement of Rule 23(a) is satisfied.

**B. Rule 23(b) Requirements**

Upon satisfying the four requirements of Rule 23(a), a party seeking class certification must

also demonstrate that the action falls within one of the three categories of Fed. R. Civ. P. 23(b). Egge seeks certification under Fed. R. Civ. P. 23(b)(3), which requires the court to find:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**1. Predominance**

Reliance contends that individual questions of fact predominate over the common questions of law or fact for the same reasons that it argued the commonality and typicality requirements were not met. Each putative class member must individually show (1) whether or not the debtor objected to the interest assessment, (2) whether or not interest was paid, and (3) how much actual damages were suffered. Reliance argues that the number of notices and the time period before interest assessment will be different for each Plaintiff. Reliance claims that the applicability of the account stated defense is therefore determined predominantly by individual fact questions. Egge counters that predominance is satisfied because Reliance's interest charges represent a systemic corporate practice. Egge's claim is that no class member received adequate notice, regardless of whether each class member received one or two letters, and how many days elapsed (under 60 days) before interest was assessed. The common elements include all putative class members receiving one or two letters with identical language, followed by retroactive interest charges approximately 55 days from receipt of the first letter, with no further reference to "interest" actually being charged, and where accumulated interest amounts were never separately identified. A common question of law, equally applicable to all who meet the class definition, is whether or not the language in the letters is sufficient to create an account stated given the circumstances applicable to all class members.

Liability to each class member turns on a common question. The individual variations can be subsumed into the common questions by creating sub-classes, such as a sub-class of people who received one letter, and a sub-class of people who received two letters. The individual questions regarding which potential class members actually paid interest, thereby incurring actual damages, also do not predominate over the common question of whether or not the interest charges were appropriate given the level of notice. Therefore, the common questions of law predominate, satisfying the predominance requirement of Rule 23(b)(3).

**2. Superiority**

Rule 23(b)(3) also requires the Court to consider "the interest of members of the class in individually controlling the prosecution or defense of separate actions," and "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(A) & (D); see also Sonmore, 206 F.R.D. at 265-66. Reliance argues that a class action is not the superior method for adjudication of this dispute because the potential damage recovery of class members would be less than that of individual plaintiffs bringing their own claims. The maximum potential award of statutory damages if an action is maintained as a class action is "clearly relevant" to the interest of class members. Bryant v. Bonded Accounts, No. CIV00-1072, 2000 WL 33727749, at *9 (D. Minn. Oct. 30, 2000). In Sonmore and Bryant, class certification was denied after a finding that the amount of potential statutory damages available to class members would be substantially less than the possible $1,000 statutory allowance. In both cases, statutory damages were the only damages sought. Here, in addition to statutory damages, the putative class is also seeking actual damages of approximately $440,964.98, cumulatively, in interest payments collected by Reliance from April, 1999, through August, 2001. Roe Aff. ¶ 3.

Any debt collector who violates the FDCPA with respect to an individual is liable for "actual damage sustained," "additional damages as the court may allow, but not exceeding $1,000," and "the costs of the action, together with a reasonable attorney's fee." 15 U.S.C. §§ 1692k(a)(1), (2)(A) & (3). In the case of a class action, however, the defendant is limited to liability for additional damages up to $1,000 for each named plaintiff, and "such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector," plus actual damages and attorney fees. 15 U.S.C. § 1692k(2)(B). Reliance alleges, but Egge contests, that its balance sheet net worth[6] is approximately $7,578,000. Roe Aff. ¶ 2. Accordingly, Reliance asserts that one percent of this amount would be approximately $75,000, which would be divided between the approximately 350,000 accounts of the putative class. This yields a statutory damage recovery of approximately twenty-one cents per account.[7] Reliance asserts that in an individual suit a plaintiff could recover up to $1,000 statutory damages, rendering the class action vehicle inferior to individual law suits. In addition to Sonmore and Bryant, Reliance relies on Lyles v. Rosenfeld Attorney Network, No. 199CV322-D-A, 2000 WL 798824 (N.D. Miss. May 17, 2000). In Lyles, the maximum statutory recovery available to class members was $18.68, which was, the Court said, "a far cry from the actual average damage suffered by the putative class members, $298.78 [each]." Id. at *6. The Lyles court found the $18.68 award to be "shockingly low" when compared to the possible $1,298.78 each individual plaintiff would be eligible to receive under the statute. This analysis overlooks the fact

[6] "[T]he statutory term net worth means book net worth or balance sheet net worth . . . ." Sanders v. Jackson, 209 F.3d 998, 1001 (7th Cir. 2000).

[7] The actual number of class members is smaller than the number of accounts because some individuals have more than one account.

pattern presented in the instant case where the class members could be awarded actual damages plus a proportionate share of the statutory damages. The reality that when multiple individual suits are brought there is a "slim likelihood that an individual plaintiff would receive $1,000 in [statutory] damages" should also be recognized. Tarnoff v. American Honda Finance Corp., No. 96 C 6923, 1999 WL 98331, at *3 (N.D. Ill. Feb. 19, 1999). Here, as in Tarnoff where the class members would recover less than one dollar in a class action but "up to" $1,000 individually, "it is doubtful that more than a very few individuals would attempt to vindicate their rights through their own lawsuits." Id.

> [T]he notion that individual plaintiffs may recover higher damages if they were to pursue their own claims is implicit in the very idea of a class action, and is part of the balance that is struck in Rule 23 of providing a vehicle for the aggregation of small claims while still seeking to protect those individual claimants.
>
> The possibility that putative class members would be entitled to greater recovery should they pursue claims on their own arises in every class action, but it is not grounds for denying class certification, if the other criteria are met.

Macarz v. Transworld Systems, Inc., 193 F.R.D. 46, 55 (D. Conn. 2000). All of the other criteria here are met. Reliance's position that 350,000 individual FDCPA actions "would somehow provide for greater fairness and efficiency than the streamlined procedure of a class action" is dubious. Id. Congress intended the "private attorney general" enforcement mechanism of the FDCPA to facilitate the deterrent and curative effect of eliminating abusive collection practices. Id. (quoting Phillips v. Amana Collection Servs., 1992 WL 227839, at *7 (W.D.N.Y. Aug. 25, 1992). Absent a class action, it is unlikely that many putative class members would bring individual suits against Reliance. While that would diminish Reliance's exposure to liability, it is not a valid consideration in assessing class certification.

That class members would receive a minimal statutory damage award in a class action here

does not warrant denial of class certification.

> [A] de minimus recovery . . . should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. . . . True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997); see also Cohen v. Uniroyal, Inc., 77 F.R.D. 685, 695 (E.D. Penn. 1977) (holding that where putative class members would either clog court dockets with multiple and scattered suits or not seek redress because their individual losses may be too small, the result is unjust and inefficient, contrary to the goals of Rule 23 favoring the economies of time, effort and expense). The small average individual losses in this case make individual lawsuits highly unlikely, making the class action the superior method for adjudication of the claims against Reliance. The objectives of the FDCPA, and the goals of Rule 23, are served by class certification in this case.

"[Reliance's] alleged concern that individual class members may be able to recover more in individual actions is adequately addressed by use of the Rule 23(b)(3) opt-out procedure." Roe v. Publishers Clearing House, Inc., No. 98 C 3330, 1999 WL 966977, at *1 (N.D. Ill. Oct 4, 1999). Members of class actions maintained under Rule 23(b)(3) who decide their interests are better served by an individual action will be excluded from the class if the member so requests by a specified date. Fed. R. Civ. P. 23(c)(2)(A); Macarz, 193 F.R.D. at 55. "This 'opt out' provision is designed to ensure that even in a class action that meets all the prerequisites of Rule 23, 'the individual interest is respected.'" Macarz, 193 F.R.D. at 55 (citation omitted). Use of the opt out procedure in this case

will protect the interests of any parties wishing to bring individual lawsuits.

Finally, Reliance argues that class action management in this case would be unwieldy, due to the large number of potential class members, causing an "extremely onerous" burden and expense wherein "any trial in this matter would degenerate into literally, thousands of mini-trials . . . ." Def. Mem. in Supp. at 3, 20 (emphasis in original). Egge counters that the spreadsheet information supplied by Reliance contains all the information required to calculate damages.[8] "[D]amages can be assessed once there is a determination of liability." Cohen, 77 F.R.D. at 695. In the event that liability is established, a defendant should not be able to avoid a class action simply because its conduct targeted an inconveniently large number of people. The requirements of Rule 23(b) are satisfied, and class certification is granted.

[8] Reliance argues that damage calculation would be difficult because, for each class member, "at some point an account stated would be established with respect to the interest assessments made in each case," and this determination would differ for each individual, affecting both liability and damage calculations. Def. Mem. in Opp. at 12. However, it is likely that a uniform amount of time sufficient to create an account stated on the basis of Reliance's collection letters, if any, would apply to all class members. Moreover, as noted above, the merits of Egge's claim and Reliance's defense are not at issue at this stage. Eisen, 417 U.S. at 177.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Egge's Motion to Certify Class [Doc. No. 62] is **GRANTED,**
2. Healthspan's Motion to Deny Class Certification [Doc. No. 58] is **DENIED**, and
3. A class is certified of all persons from whom, anytime after April 11, 1999, Reliance attempted to, or did, collect interest, no later than 60 days after receipt of the first collection letter, in circumstances where there was no underlying contractual obligation by the debtor to pay interest, and the debtor did not object to the interest assessments.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: May 16, 2002