UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David Egge, for himself and on behalf of all others similarly situated,

Plaintiff,

v.

Healthspan Services Company d/b/a Reliance Recoveries,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-934 ADM/AJB

---

Jordan M. Lewis, Esq., and Wood R. Foster, Jr., Esq., Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, MN, appeared for and on behalf of Plaintiff.

James F. Roegge, Esq., and Susan K. Fitzke, Esq., Meagher & Geer, P.L.L.P., Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On September 25, 2002, the Motion for Summary Judgment [Docket No. 79] of Defendant Healthspan Services Company d/b/a Reliance Recoveries ("Reliance"), was argued before the undersigned United States District Judge. Plaintiff David Egge ("Egge") alleges Reliance violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e & 1692f, by assessing interest on accounts with no underlying legal obligation or promise by the debtor to pay such interest. Am. Compl. ¶ 10. Reliance submits that Minn. Stat. § 334.01 specifically permitted Reliance, on behalf of Allina Hospitals and Clinics ("Allina"), to make the challenged interest assessments on the relevant accounts. For the reasons set forth below, Reliance's Motion is granted.

OCT 28 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. BACKGROUND[1]

In March 1995, Egge's wife was hospitalized for about three weeks and incurred medical expenses with Allina's Abbott Northwestern Hospital in Minneapolis, Minnesota. In sum, Egge was responsible for $3,959.00 of medical bills,[2] of which $50 was paid. On November 13, 1995, Allina assigned the remaining debt to Reliance for collection.

On or about November 14, 1995, Reliance mailed a form letter collection notice to Egge identifying his account balance and stating that "interest may be charged at 6% per annum on the past due balance." Lewis Aff. Ex. B. On or about December 14, 1995, Reliance sent a second letter to Egge containing the same sentence stating that interest "may" be charged. Reliance began assessing interest on Egge's account on January 7, 1996, approximately 53 days after the first letter was sent. Without further notice to Egge, interest was charged retroactively to the date of the first letter, and subsequently was charged, typically monthly.

Thereafter, all correspondence from Reliance to Egge identified only a total account balance, and did not separate the principal and the interest amounts. Egge alleges that Reliance failed to affirmatively state that interest had been charged, and that none of the other form letters sent to him after January 7, 1996, ever mentioned "interest." Reliance contends that identifying the total account balance constitutes a sufficient statement of interest charges because "even the least sophisticated consumer would recognize that the amount claimed owing by Reliance on the

---

[1] Because the issues relating to this Motion are legal issues, and in light of the extensive fact stipulations by the parties in this case, only an abbreviated recitation of the factual background is necessary here, and the particulars of the previous conciliation court proceedings are not discussed.

[2] Under Minnesota law at the time, Egge was legally responsible for his wife's medical expenses. Egge v. Healthspan Servs. Co., 115 F. Supp. 2d 1126, 1128 (D. Minn. 2000); Egge v. Healthspan Servs. Co., No. Civ. 00-934, 2001 WL 881720, at *1 (D. Minn. July 30, 2001).

debtor's unpaid account was increasing due to an interest assessment." Def.'s Mem. in Opp. at 15 [Docket No. 64]. Egge asserts that interest is chargeable only when the debtor has agreed to pay it,[3] and that neither he nor any putative class member were party to an agreement to pay interest.

In a sample of 50 prospective class members, all of the debtors received one letter containing the sentence "interest may be charged at 6% per annum on the past due balance," and approximately half of the debtors received a second such letter, as Egge did, approximately 35 days later. All but one debtor sampled were assessed six percent retroactive interest charges approximately 53-55 days after receipt of the first collection letter. For all putative class members, the collection letters each contained the identical sentence regarding interest charges, and all received either one or two letters, but no more than two. Plaintiff asserts that none of the other prospective class members received any form of notice of interest assessment other than these letters, and there is no evidence of any prospective class member having objected in response to the letters. None of the putative class members were provided any statement of the amount of interest charged. While no putative class members agreed to pay interest, all prospective class members received the same letter or letters, and were charged interest retroactively approximately 55 days after receipt of the first letter. Accordingly, Egge claims Reliance violated the FDCPA.

This Court granted Egge's Motion for Class Certification on May 16, 2002 [Docket No. 74], certifying a class of all persons from whom, anytime after April 11, 1999, Reliance

[3] The general rule is that liability for interest is purely a matter of contract, requiring a promise to pay it. American Druggists Ins. v. Thompson Lumber Co., 349 N.W.2d 569, 573 (Minn. Ct. App. 1984) (citing Tate v. Ballard, 68 N.W.2d 261(Minn. 1954)).

attempted to, or did, collect interest, no later than 60 days after receipt of the first collection letter, in circumstances where there was no underlying contractual obligation by the debtor to pay interest, and the debtor did not object to the interest assessments.

Reliance has now filed the present Motion for Summary Judgment presenting a defense not previously raised in this litigation. Reliance argues that Minn. Stat. § 334.01 Subd. 1 specifically permitted Reliance, on behalf of Allina, to make the challenged interest assessments.

## III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Further, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted).

Minn. Stat. § 334.01 Subd. 1 states that "[t]he interest for any legal indebtedness shall be

at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing." Minn. Stat. § 33401 Subd. 1 (2001). Reliance argues that this statutory language authorizes the imposition of an interest charge on any legal indebtedness. Reliance claims that because the principal amount is an ascertainable liquidated claim, and because Reliance is a wholly owned subsidiary of Allina, it has standing to seek interest from Egge under the exception to the general rule requiring a contractual agreement to pay interest. Accordingly, Reliance argues no FDCPA violation occurred.

In response, Egge argues that the debt amount is not readily ascertainable in this case since varying amounts were asked for and awarded by the conciliation court. Egge also asserts that interest charges are considered part of the principal debt, and that because Reliance is a separate legal entity from Allina, Reliance has no right to the principal debt (including the interest) Egge owes to Allina. Egge also argues under Rule 8 of the Federal Rules of Civil Procedure that Reliance's asserted defense is waived.

**A. Rule 8 of the Federal Rules of Civil Procedure**

Egge claims that Reliance's argument on the applicability of Minn. Stat. § 334.01 is a defense that must be set forth affirmatively under Federal Rule of Civil Procedure 8(c). Reliance's position regarding § 334.01 is consistent with its initial denial that it was attempting to collect interest that Egge was not obligated to pay "under Minnesota law." Am. Answer ¶ 4. Moreover, this legal theory presented by Reliance is not an "avoidance or affirmative defense" under Rule 8(c), but it is rather an alternative legal defense that does not require affirmative pleading. See Herndon v. Wm. A. Straub, Inc., 17 F. Supp. 2d 1056, 1063 (E.D. Mo. 1998). The fact that this is the fifth dispositive motion filed in this case, occurring "late in the game," may

cause frustration, but does not invalidate the potential legitimacy of the defense asserted.

**B. Liquidated Debt**

A creditor is entitled to interest where damages are liquidated, or where damages are unliquidated and the amount due is readily ascertainable by computation or by reference to generally recognized objective standards of measurement. ICC Leasing Corp. v. Midwestern Mach. Corp., 257 N.W.2d 551, 556 (Minn. 1977); L.P. Med. Specialists, Ltd. v. St. Louis County, 379 N.W.2d 104, 110 (Minn. Ct. App. 1985). Although Egge makes no argument in his written materials regarding the ascertainability of the disputed debt, at oral argument counsel argued that the debt is not liquidated or readily ascertainable. Counsel noted that Reliance sought to collect a larger amount during the conciliation court proceedings, but was awarded a smaller amount, arguing that this divergence prevents the principal amount from being liquidated or readily ascertainable. However, the balancing of equities by the conciliation court to arrive at an award value has no bearing on the issues relevant to this Motion.

The record establishes that the liquidated debt owed by Egge to Allina is $3909. Egge was notified in writing five times over five months that the remaining balance on his wife's first hospital bill was $3,759.00. Hewitt Aff. ¶ 3, Ex. 1. Egge was also notified at least four times that the remaining balance on his wife's second hospital bill was $200, of which the Egges paid $50. Roe Aff. ¶ 5, Ex. 4. Egge does not dispute the amount or validity of these debts. Egge Dep. at 16-18, 69-70. Therefore, $3909 is a readily ascertainable sum certain amount owed by the Egges.

**C. Standing**

Relying on Newman v. Checkrite California, Inc., 912 F. Supp. 1354 (E.D. Cal. 1995),

Egge claims that the exception to the rule requiring an agreement to pay interest lies in equity, and therefore only Allina can raise it as a defense, not a third party such as a debt collector. Newman, 912 F. Supp. at 1376 (stating that "[e]quitable defenses . . . are personal"). Egge argues that the rationale behind the equitable exception requires an injury suffered by the creditor where a debtor withholds interest on purchase money due. Lund v. Larsen, 222 Minn. 438, 440-41 (Minn. 1946). Thus, Egge argues any injury was suffered only by Allina, not by Reliance.

The Lund court describes "the fundamental distinction between interest as such and interest as damages." Id. at 441. Interest as such is compensation for the use of another's money, liability for which is purely contractual. Id. Interest as damages, "whether allowed by statute or otherwise, is an amount awarded for default in failing to pay money when due." Id. Any interest due to Allina on the Egges' outstanding bill "is just as much a part of the principal claim as the principal thereof." Bourdeaux v. Gilbert Motor Co., 220 Minn. 538, 544 (1945). Such interest owed by a creditor in default of payment for "keeping [the creditor] out of the use of his money . . . goes with the principal, as the fruit with the tree." Id. 543-44. To the extent that Allina was properly owed interest on the overdue principal, the right to collect the interest transferred to Reliance along with the right to collect the principal. Id. Additionally, the longstanding practice between Allina and Reliance gave Reliance permission to assess interest on accounts assigned by Allina to Reliance for collection. Lewis Aff. Ex. 4; Roe Dep. at 33-36. The remaining question is whether or not the claim is subject to prejudgment interest under Minnesota law pursuant to § 334.01 Subd. 1.

**D. Section 334.01 Subd. 1**

Egge alleges Reliance violated the FDCPA, 15 U.S.C. §§ 1692e & 1692f, by assessing interest on accounts with no underlying legal obligation or promise by the debtor to pay such interest. Am. Compl. ¶ 10. Egge's allegations are premised on the theory that Reliance had no legal right to assess interest on the Egges' delinquent account. While Reliance asserts that Minn. Stat. § 334.01 authorizes the challenged interest charges in this case, Egge claims that § 334.01 is "entirely irrelevant" because it only functions to "cap" the interest chargeable on a legal indebtedness, not to authorize the charging of interest. Pl.'s Mem. in Opp. at 2. That is, Egge argues that § 334.01 is merely a usury statute identifying the interest rate amount above which interest charges are to be considered usurious. Egge contends that the equitable assessment of interest on liquidated or readily ascertainable debts derives from common law, rather than § 334.01, citing Trapp v. Hancuh, 587 N.W.2d 61, 66 (Minn. Ct. App. 1998) (stating that "both statute and common law govern the award of prejudgment interest" and that "[p]rior to 1984, prejudgment interest was available only on liquidated claims and on unliquidated claims if the amount was readily ascertainable").

Egge relies on an impressive list of cases dealing with § 334.01 in the contexts of usury and the calculation of prejudgment interest. See, e.g., Barton v. Moore, 558 N.W.2d 746, 750 (Minn. 1997) (stating that interest charges on loans are determined to be usurious under § 334.01); John David Contracting, Inc. v. Brozek, 535 N.W.2d 397, 398 (Minn. Ct. App. 1995) (using § 334.01 to calculate the interest rate on a mechanics' lien); Miller v. Colortyme, Inc., 518 N.W.2d 544, 546 (Minn. 1994) (referring to § 334.01 as the "general usury statute"); Northwest Wholesale Lumber, Inc. v. Citadel Co., 457 N.W.2d 244, 250 (Minn. Ct. App. 1990) (using

§ 334.01 to calculate prejudgment interest); Negaard v. Miller Const. Co., 396 N.W.2d 833, 835 (Minn. Ct. App. 1986) (calling § 334.01 "Minnesota's usury statute"); H.J. Kramer Plumbing & Heating, Inc. v. Scharmer, 386 N.W.2d 742, 748 (Minn. Ct. App. 1986) (holding that "interest at the legal rate means that interest is calculated . . . under § 334.01"). To be sure, there is no dispute that § 334.01 operates as Egge claims, namely that it functions to set the ceiling for calculating the legal rate of interest, where interest charged in excess of the rate identified by § 334.01 is deemed usurious.

Whether or not it also authorizes the charging of interest on any legal indebtedness, in addition to capping the rate of interest legally chargeable, is the nub of the issue here. Language in several other cases suggests it does. See, e.g., Nelson v. Illinois Farmers Ins. Co., 567 N.W.2d 538, 543 (Minn. Ct. App. 1997) (stating that § 334.01 "applies to interest on 'legal indebtedness,' such as wages and tax refunds"); Summit Court, Inc. v. Northern States Power Co., 382 N.W.2d 560, 562 (Minn. Ct. App. 1986) ("Section 334.01 applies to all legal indebtedness . . . ."); Toombs v. Daniels, 361 N.W.2d 801 (Minn. 1985) ("Interest awarded under [ § 334.01] is considered a substitute for income the beneficiary might have earned . . . ."); Henry v. Metropolitan Waste Control Comm'n, 401 N.W.2d 401, 402 (Minn. Ct. App. 1987) (holding that plaintiff is "entitled" to interest on back pay "under" § 334.01); Deutz & Crow Co. v. Anderson, 354 N.W.2d 482, 489 (Minn. Ct. App. 1984) (holding that interest is six percent per year "pursuant to" § 334.01 on readily ascertainable debts); Bourdeaux, 20 N.W.2d at 394 (stating that § 334.01 is a "general interest statute" that "imposes interest at six percent for failure to pay a debt when due"). These cases imply § 334.01 can properly be used as a basis on which to

charge interest for any legal indebtedness that is overdue.

The Minnesota Supreme Court, in Youngner v. State, 147 N.W.2d 354 (Minn. 1966), stated that: "We have a statute, [§ 334.01], which does impose an interest rate of 6 percent per annum on any legal indebtedness." Youngner, 147 N.W.2d at 356. The Youngner court also distinguished interest requiring an agreement to pay from "[i]nterest as damages," which is "an award for default in failing to pay money when due." Id. (citing Lund, 222 Minn. 438). Youngner buttresses Reliance's argument that § 334.01 imposes interest charges on liquidated debts, at the legal rate specified by the statute. See also Lund, 222 Minn. at 442 (holding that absent a contract providing for interest a purchaser is nevertheless liable for interest as damages after default) (citations omitted); In re Consumers Realty & Dev. Co., BKY 98-40721, 1999 Bankr. LEXIS 35, at *31 (Bankr. D. Minn. Jan. 12, 1999) (describing "interest as damages" and stating that for liquidated debts "Minnesota state law provides for interest at the legal rate, calculated in accordance with the provisions of Minn. Stat. § 334.01").

Section 334.01 allows a six percent interest charge on any legal indebtedness. State by Cooper v. Mower County Soc. Servs., 434 N.W.2d 494, 500-01 (Minn. Ct. App. 1989). The Minnesota Supreme Court has referred to the ability to collect this interest on debt as an entitlement. Donaldson v. Mankato Policemen's Benefit Ass'n, 278 N.W.2d 533, 538 (Minn. 1979) ("[Plaintiff] is entitled to simple interest at 6 percent per annum, Minn. St. 334.01, on the payments as they become due.").

The plain language of the statute is consistent with this interpretation. Section 334.01 states that: "The interest for any legal indebtedness *shall be* at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing." Minn. Stat. § 334.01 Subd. 1 (2001)

(emphasis added). This expresses intent for interest to attach to any legal indebtedness notwithstanding any independent source authorizing the imposition of interest.

In full context, the statute itself also negates a claim that § 334.01 Subd. 1 functions only to cap the interest amount allowed at six percent. While the statute allows a six percent interest rate for any legal indebtedness, it then states that "[n]o person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, than $8 on $100 for one year." Minn. Stat. § 334.01 Subd. 1. Accordingly, the statutory cap on interest for both contractual and non-contractual interest is eight percent. The first sentence of § 334.01 Subd. 1 would seemingly be rendered superfluous if it did not operate to allow the assessment of six percent interest on any legal indebtedness.

The U.S. District Court for the Western District of Wisconsin has accepted this argument in a very similar situation. In addressing the identical issue with respect to Wisconsin's statutory counterpart to Minn. Stat. § 334.01, the Court in Sgrignoli v. Paskin & Oberwetter Law Offices, Ltd., 96-C-0841-S (W.D. Wis. Jan. 29, 1997), held that a creditor was entitled to "prejudgment interest pursuant to § 138.04, Wis. Stat." on a liquidated claim. Id. at slip op. 10-11. There, the defendant law firm was hired by Physicians Plus to collect an unpaid (apparently medical services) debt owed by the plaintiffs. The defendant law firm, acting as the debt collector, then began charging five percent interest on the liquidated debt. Wis. Stat. § 138.04 provides that:

> The rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less sum or for a longer or a shorter time; but parties may contract for the payment and receipt of a rate of interest not exceeding the rate allowed . . . , in which case such rate shall be clearly expressed in writing.

Wis. Stat. § 138.04 (2001). Judge Shabaz noted that prejudgment interest is a "penalty for the debtor's refusal to pay liquidated damages which are legally due," and that it "compensates the creditor for the lost time value of the money." Id. at slip op. 9. Wisconsin's statutory counterpart to Minn. Stat. § 334.01 "explicitly authorizes the collection of prejudgment interest upon the principal amount [owed]." Id. at slip op. 10.

The reasoning of Sgrignoli supports the determination here that § 334.01 authorized Reliance to impose a six percent rate of interest on the Egges' liquidated debt. Accordingly, no FDCPA violation can entail from Reliance having charged interest to Egges' liquidated debt. This finding precludes Egge's remaining claims in this lawsuit. Reliance's Motion for Summary Judgment is granted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Reliance's Motion for Summary Judgment [Docket No. 79] is **GRANTED**.[4]

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: October 28, 2002

[4] Egge is currently the only identified member of the certified class. At oral argument, counsel related the class identification process was being held in abeyance until this Motion was resolved. Summary judgment against Egge appears dispositive of this case in its entirety. Judgment will be entered to put the case in an appellate posture.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.